**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 17-101-DLB-CJS

DT GRAT JMT, LLC, et al.                                         **PLAINTIFFS**

**V.**                      <u>**MEMORANDUM OPINION & ORDER**</u>

**KURTIS KEENEY, et al.**                                        **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \*

Defendants Kurtis Keeney, Dennis Williams, Nathan Smith, Management-SSK, LLC ("Management-SSK"), Augusta Home Sales, LLC ("Augusta Home Sales"), Declaration Homes, LLC ("Declaration Homes"), and MHC Management, LLC ("MHC Management") (collectively "Defendants") seek dismissal of Plaintiffs' lawsuit. (Doc. # 38). Specifically, Defendants claim that dismissal is appropriate for five separate reasons: (1) the Court lacks subject matter jurisdiction; (2) the Plaintiffs have failed to join the real parties in interest; (3) Counts Two, Three, and Four are barred by the statute of limitations; (4) the Plaintiffs have failed to state a claim upon which relief can be granted; and (5) the lawsuit, in reality, is a lawsuit to dissolve the various business entities. *Id.* The Court having heard oral argument on November 3, 2017, and Plaintiffs' having subsequently filed a Motion for Leave to File Supplemental Authority (Doc. # 69) to which the Defendants have responded (Doc. # 70), the Motion to Dismiss is fully briefed (Docs. # 44, 59, 69), and is ripe for the Court's review. For the reasons that follow, Defendants' Motion to Dismiss (Doc. # 38) is **granted** and Plaintiffs' claims are dismissed.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In essence, this action concerns Defendants' alleged fraudulent conduct, self-dealing, and mismanagement of thirteen limited-liability companies that are collectively referred to as the "Park Companies." Beginning in 2011, Plaintiffs DT GRAT JMT, LLC ("DT GRAT"), SG LV, LLC ("SG LV"), Temecula Holdings, LLC ("Temecula"), and SG LV 2, LLC ("SG LV 2") initiated a business relationship with Defendant Keeney, in which DT GRAT, SG LV, Temecula, SG LV 2, Keeney, and his associates organized thirteen limited-liability companies to purchase mobile-home parks. (Doc. # 1 at ¶ 9). Together, the thirteen limited-liability companies are collectively referred to as the "Park Companies." *Id.* at ¶ 17. The individual limited-liability companies that form the Park Companies are as follows: (1) 10427 Hickory, LLC ("Hickory"); (2) Valley Station 1, LLC ("Valley Station"); (3) V-Station, LLC ("V-Station"); (4) Paducah MHC, LLC ("Paducah"); (5) Carrollton MHC, LLC ("Carrollton"); (6) Alexandria MHC, LLC ("Alexandria"); (7) Campbell 27, LLC ("Campbell"); (8) Owensboro MHC, LLC ("Owensboro"); (9) Walton MHC, LLC ("Walton"); (10) Cincy MHP, LLC ("Cincy MHP"); (11) Vanderburgh MHC, LLC ("Vanderburgh"); (12) MH Acceptance, LLC ("MH Acceptance"); and (13) Evansville MHC, LLC ("Evansville"). *Id.* Notably, these thirteen limited-liability companies are not named parties in this action.

Keeney serves as the managing-member of the thirteen limited-liability companies that form the Park Companies pursuant to each limited-liability company's operating agreement. *Id.* at ¶ 10. Plaintiffs are also members of those limited-liability companies.[1]

---

[1]     DT GRAT and SG LG LV 2 together hold a direct or indirect 50% membership interest in Hickory, Valley Station, V-Station, Paducah, Carrollton, Alexandria, Campbell, Owensboro, Walton, and Vanderburgh. (Doc. # 15 at 16). Keeney, Smith, and Williams each own a direct or indirect 16.66% interest in the aforementioned limited-liability companies. *Id.* Furthermore, SG LV (whose interest was eventually

(Doc. # 15 at ¶ 16-17). The parties' membership in these limited-liability companies gave rise to this lawsuit—namely, Defendants' alleged fraudulent conduct, self-dealing, and mismanagement of the limited-liability companies that form the Park Companies.

In addition to the Park Companies, Keeney also separately manages four other limited-liability companies, referred to by Plaintiffs as the "Keeney Business Entities." *Id.* at ¶ 19. The Keeney Business Entities are: (1) Management-SSK, (2) Augusta Home Sales, (3) Declaration Homes, and (4) MHC Management, all of which are named Defendants in this action. *Id.* Keeney provides management services to the Park Companies through Management-SSK. *Id.* at ¶ 18. Plaintiffs do not have a membership interest in the Keeney Business Entities. *Id.* However, both Defendants Williams and Smith have membership interests in the Keeney Business Entities. *Id.*

The operating agreements for ten of the thirteen limited-liability companies that form the Park Companies state that "prior to the end of the year, the Manager shall provide to the Members a proposed annual budget for the next calendar year."[2] (Doc. # 1 at ¶ 31). The operating agreements further provide that "[t]he budget must be approved in writing by the Members." *Id.* However, the Complaint alleges that annual budgets have "not been consistently provided to Plaintiffs, or approved by the members, yet Keeney continues to disburse funds without the written consent required by the operating agreements." *Id.* at ¶ 32.

---

transferred to DT GRAT) holds a 45% membership interest in Cincy MHP, SG LV 2 has a 5% membership interest, and Keeney, Williams, and Smith each have a 16.66% membership interest in Cincy MHP. *Id.* Lastly, DT GRAT holds a 50% membership interest in MH Acceptance, and Keeney, Smith, and Williams each have a 16.66% membership interest in MH Acceptance. *Id.* at 17.

[2]     Those ten limited-liability companies are: (1) Alexandria; (2) Campbell; (3) Carrollton; (4) Cincy MHP; (5) MH Acceptance; (6) Owensboro; (7) Paducah; (8) V-Station; (9) Valley Station; and (10) Vanderburgh.

The operating agreements further permit the limited-liability companies to "enter into a contract, action, or transaction … between the Company and any other Person in which one or more of its Members, or Manager … have a financial or personal interest, only if approved by Members holding a Majority Interest." *Id.* at ¶ 33. The Complaint alleges that financial documents show Keeney "made transfers to the Keeney Business Entities" from ten of the limited-liability companies that form the Park Companies without seeking consent from Plaintiffs prior to making the transfers, as required by the operating agreements. *Id.* at ¶ 35-36. Furthermore, despite Plaintiffs' requests, Keeney has allegedly failed to provide an accounting detailing the transactions. *Id.*

In 2016, Plaintiffs sought to end their business relationship with Keeney, Smith, and Williams and relied upon Keeney and Management-SSK to sell the mobile-home parks owned by the Park Companies. (Doc. # 15 at ¶ 40). Keeney provided potential purchasers financial documents relating to the Park Companies and Plaintiffs became aware of Keeney's alleged financial mismanagement. *Id.* at ¶ 41. Plaintiffs allege that they uncovered transactions between the Park Companies and the Keeney Business Entities that occurred without the consent of DT GRAT or SG LV 2. *Id.* Upon discovering the transactions, Plaintiffs employed Stephen Mann, an independent, third-party Certified Public Accountant, to review the financial information provided to them by Keeney. *Id.* at ¶ 43. Mann concluded that the amounts misappropriated by Keeney to the Keeney Business Entities total $11,720,821.11.[3] *Id.* The Amended Complaint further alleges that Defendants Smith, Williams, and the Keeney Business Entities "knowingly participated

---

[3]     Keeney has indicated that $200,000 of the $11,720,821.11 went to benefit the Park Companies. *Id.* at ¶ 55. The remaining transfers by Keeney out of the Park Companies to the Keeney Business Entities allegedly were not used for the benefit of the Park Companies. *Id.*

and gave Keeney substantial assistance or encouragement in effectuating the transfer of funds from the Park Companies to the Keeney Business Entities." *Id.* at ¶ 48.

Because of the Defendants' alleged misdeeds, Plaintiffs have brought claims alleging breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and fraud.[4]  (Doc. # 15 at 26-27).

## II.  ANALYSIS

### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The standard is met when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.*  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculation level."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

### B.  The Court lacks subject matter jurisdiction.

Federal courts are courts of limited jurisdiction which may exercise only those powers authorized by the Constitution or a statute.  *Douglas v. E.G. Baldwin & Assocs., Inc.,* 150 F.3d 604, 606 (6th Cir. 1998) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)).  Courts must first presume that a cause of action lies

---

[4]     Despite discussions otherwise at Oral Argument, Plaintiffs' seek both an accounting of the Park Companies and money damages from Defendants' Management-SSK, Augusta Home Sales, Declaration Homes, and MHC Management.  (Doc. # 25 at 4-5).

outside of the court's limited jurisdiction, "'and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Id.* (quoting *Kokkonen*, 511 U.S. at 377). Thus, the first question this Court must consider is whether it has jurisdiction to hear this case. *Id.* at 606-07 (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986)).

Plaintiffs have alleged that subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1332 because this is a civil action involving citizens of different states and the amount in controversy exceeds $75,000. (Doc. # 15 at 7). As the action is currently plead, complete diversity exists between the parties. That is because Plaintiffs are citizens of Nevada, Ohio, and Michigan, and Defendants are citizens of Kentucky. (Doc. # 57 at 1-2). However, the Court's analysis must not end there. The Court must consider whether the proper parties are presently before the Court.

Defendants present a compelling argument for why this Court lacks subject-matter jurisdiction, despite its apparent existence. Defendants argue that Plaintiffs failed to join the real parties in interest as required by Rule 17(a) of the Federal Rules of Civil Procedure.[5] (Doc. # 38 at 1). According to Defendants, the proper Plaintiffs in this action are the thirteen limited-liability companies known as the Park Companies, and not the individual members of those limited-liability companies. (Doc. # 38-1 at 5-6). Defendants believe that those limited-liability companies are the real parties in interest because "individual members of LLCs may only bring claims in their individual capacity when they have suffered a separate and distinct injury from that of the LLC." *Id.* at 6. Defendants argue that the current Plaintiffs have not suffered an injury that is separate and distinct

---

[5]     Defendants have also filed a Motion to Substitute Parties (Doc. # 37) seeking the same relief.

from the injury allegedly suffered by the Park Companies. *Id.* Thus, Defendants contend that the Plaintiffs' claims are derivative, and under Rule 17(a), the Court must substitute the current Plaintiffs for the thirteen-limited liability companies collectively referred to as the Park Companies. *Id.* The Court agrees.

Rule 17(a) of the Federal Rules of Civil Procedure requires an action to be "prosecuted in the name of the real party in interest." To determine who the real party in interest is, the Court must determine whether the current action is direct or derivative.[6] The parties strongly disagree on this point. Plaintiffs assert that they are the real parties in interest because this is a direct, not derivative, cause of action. *Id.* at 5. Specifically, Plaintiffs argue that the important distinction is that the alleged misdeeds involve wrongs to *certain* members—not *all* members—of the thirteen limited-liability companies that are collectively referred to as the Park Companies. (Doc. # 44 at 2). That is, because the misdeeds were to the benefit of some members of the limited-liability companies—Defendants—and to the detriment of other members of the limited-liability companies—Plaintiffs. *Id.* Plaintiffs believe that it is this distinction that makes Plaintiffs the real parties in interest, rather than the thirteen limited-liability companies known as the Park Companies. Thus, Plaintiffs argue that they are entitled to bring a direct claim for the distinct harms they suffered from the Defendants' misconduct.

---

[6] A federal court sitting in diversity must apply "the choice of law rules of the forum state." *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001). A federal court exercising diversity jurisdiction must "follow the decision of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 762 (6th Cir. 2008). If the issue has not been resolved by the state's highest court, a federal court "must anticipate how the relevant state's highest court would rule'" and may rely on the state's intermediate appellate court and other persuasive authority in making this determination. *Id.* It is undisputed by the parties that Kentucky law applies. Furthermore, the Kentucky Supreme Court has yet to render a decision articulating whether an action is direct or derivative in the limited-liability context. Thus, the Court will rely on the decisions from the Kentucky Court of Appeals and other persuasive authority in making its decision.

Although Plaintiffs argue that the correct parties are before the Court, the Complaint and Amended Complaint belie this assertion. The harm alleged in this action is harm to the Park Companies as a whole—that is to say, each of the thirteen limited-liability companies that form the Park Companies—and not the individual members of those limited-liability companies. Plaintiffs' pleadings support this conclusion. Plaintiffs allege that "Keeney has transferred millions of dollars *from Park Companies* to entities in which he, and upon information and belief Williams and Smith, but not the Plaintiffs, have financial and personal interests without the required consent of the Plaintiffs resulting in $11,720,821.11 (excluding interest) due and owing to *the Park Companies.*" (Doc. # 15 at 4) (emphasis added). Further, Plaintiffs assert that "Keeney committed fraud when he failed to disclose to Plaintiffs that the funds transferred out of *the Park Companies* did not benefit or add value to *the Park Companies.*" *Id.* (emphasis added).

Plaintiffs rely on *Pixler v. Huff*, No. 3:11-cv-207-JHM, 2012 WL 3109492 (W.D. Ky. July 31, 2012), to support their argument that the breach-of-contract, breach-of-fiduciary duty, and fraud claims are direct claims, rather than derivative. In *Pixler*, the district court stated that the claims of fraud, breach of fiduciary duty, breach of contract, and promissory estoppel "each allege an injury by Plaintiff that is separate and distinct from any injury suffered by [the LLC] or the other members. Thus, these claims are direct claims that may be brought by Plaintiff in her individual capacity."[7] However, Plaintiffs' reading of *Pixler* is too broad; although breach-of-contract, breach-of-fiduciary duty, and fraud claims may sometimes be direct claims, that is not always the case. If those claims fail to allege a separate and distinct injury, they will be derivative.

---

[7] The Court assumes, despite the lack of analysis, that the Plaintiff in *Pixler* was able to demonstrate a separate and distinct injury. To the extent *Pixler* held otherwise, the Court finds it unpersuasive.

Additionally, during oral argument, Plaintiffs argued that Ky. Rev. Stat. Ann. § 275.337(1) allows them, as members of the Park Companies, to bring a direct action against Defendants. That section provides that "[a] member may maintain a direct action against a limited liability company, another member, or a manager to redress an injury sustained by, or to enforce a duty owed to, the member *if the member can prevail without showing an injury or breach of duty to the company.*" Ky. Rev. Stat. Ann. § 275.337(1) (emphasis added). Although it is true that a member of a limited-liability company may maintain a direct action against another member, that is only the case "if the member can prevail without showing an injury or breach of duty to the company." *Id.* This is precisely what Plaintiffs fail to do.

Another case in this district provides a framework for determining when claims are direct or derivative. *See 2815 Grand Realty Corp. v. Goose Creek Energy Inc.*, 656 F. Supp. 2d 707, 715-16 (E.D. Ky. 2009). In *Goose Creek*, the district court held that a plaintiff may maintain direct claims against a defendant only where he has suffered an injury that is separate and distinct from that which would be suffered by other members or the limited-liability company as an entity. *Id.* at 715. In the context of corporations, the general rule is that a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation. *Id.* Such a suit can only be brought by the corporation itself or by a shareholder derivatively since only the corporation has an action for wrongs committed against it. *Id.* Put another way, when the injury is separate and distinct, the shareholder may maintain an individual action in his own right—a direct claim. *Id.*

The Sixth Circuit in *Kepley v. Lanz,* 715 F.3d 969 (6th Cir. 2013), provides an example of a factual scenario where a shareholder's harm—or in this case, a member's harm—is separate and distinct from the harm suffered by the other shareholders or the corporate entity. In *Kepley,* the Plaintiffs alleged that the Defendant's threat forced them to sell their shares of stock at a price lower than the fair market value. *Id.* at 971. The Sixth Circuit considered the focus to be on: (1) the nature of the duty owed and (2) the nature of the injury suffered. *Id.* at 973. The Sixth Circuit found that the Defendant's duty not to sell his stock was owed to both the corporation and the Plaintiffs. However, the nature of the injury was suffered only by the Plaintiffs. The Sixth Circuit noted that "[t]here [was] nothing in the record to suggest that any of the other shareholders sold their stock or were pressured to do so." *Id.* Thus, the Plaintiffs suffered "an injury that was not suffered by either the corporation or the other shareholders. Their injury is therefore, separate and distinct." *Id.* at 974.

To follow the Sixth Circuit's analysis in *Kepley*, Defendants' duty ran to both the members of the limited-liability companies and to the limited-liability companies themselves. The liability of members and mangers of limited-liability companies is outlined in Ky. Rev. Stat. Ann. § 275.170.[8] In Kentucky, a managing member of a limited-liability company owes fiduciary duties to other members of the limited-liability company *and* to the limited-liability company itself. *Patmon v. Hobbs,* 280 S.W.3d 589, 595 (Ky. Ct. App. 2009). Although it may be true that Plaintiffs, as members of the thirteen limited-

---

[8]     To summarize the statute, "a member or manager must account to and hold as trustee for a limited liability company any profit or benefit derived from the use of company property by that member or manager including, but not limited to, confidential, proprietary, or other matters entrusted to that person's status as a manger or member." *Patmon v. Hobbs*, 280 S.W.3d 589, 595 (Ky. Ct. App. 2009).

liability companies that form the Park Companies, were owed fiduciary duties by Defendant Keeney, so too were the limited-liability companies.

However, unlike the Plaintiffs in *Kepley*, the nature of the Plaintiffs' alleged injury would be suffered by both the individual members—like Plaintiffs—and the limited liability companies. As explained in *Goose Creek*, claims based on the depreciation or diminution in the value of a shareholder's corporate stock are generally not recognized as the type of direct, personal injury which is necessary to sustain a direct cause of action. *Goose Creek Energy Inc.*, 656 F. Supp. 2d 715. That is because a diminution in the value of corporate stock resulting from some depletion of or injury to the corporate assets is an injury to the corporation; the shareholder's injury is merely incidental. *Id.*

Here, Plaintiffs allege harm from the diversion of funds from Park Companies to the Keeney Business Entities. Although couched in terms of breach of contract, breach of fiduciary duty, and fraud, "[t]he crux of these claims is that the [Park Companies'] assets and funds were misappropriated by the various Defendants, depriving Plaintiff[s] of [their] contractual share of the profits from [the Park Companies'] business profits." *Pixler*, 2012 WL 3109492 at *4. As such, Plaintiffs' claims "are actually asserting an injury to [the Park Companies], the diminution/theft/misappropriation of its assets, which in turn resulted in an injury to the Plaintiff[s'], the deprivation of the Plaintiff[s'] share of the profits from [the Park Companies]." *Id.* Plaintiffs' injury is only "an incidental one that runs from" their status as a member of the thirteen limited-liability companies that form the Park Companies, not from Defendants' wrongful actions against them individually. *Id.* Therefore, Plaintiffs have "failed to demonstrate a specific injury to themselves outside of the "diminution in the value of the corporate stock resulting from some depletion of or

injury to the [limited-liability company's] assets." *Goose Creek Energy Inc.*, 656 F. Supp. 2d at 715. Accordingly, the Plaintiffs' claims are derivative and must be brought by the Park Companies or on Park Companies' behalf pursuant to Rule 17(a) of the Federal Rules of Civil Procedure.

Plaintiffs' reliance on the limited-liability companies' operating agreements does not transform their claims into direct claims. Plaintiffs argue that their injury is separate and distinct from the harm to the thirteen limited-liability companies that form the Park Companies because "Defendant Keeney failed to obtain approvals from Plaintiffs that he was bound to obtain under the Operating Agreements and as a fiduciary, including consent to budgets and to transactions with other companies that he and other Defendants owned." (Doc. # 44 at 7). Furthermore, Plaintiffs allege that "[h]e did not observe his contract or common law duties to disclose to them his conflict of interest in connection with unauthorized transfers to third parties." *Id.* Plaintiffs argue that their injury is separate and distinct because "Defendants actively benefitted from the diversion of funds." *Id.* Again, Plaintiffs' reliance on the operating agreements is misplaced. "But for the limited liability companies, those claims would not exist." *Trident-Allied Assocs., LLC v. Cypress Creek Assocs., LLC*, 317 F. Supp. 2d 752, 754 (E.D. Mich. 2004). Those "very Agreements . . . served as the basis for the creation of the LLC in the first instance." *Id.* (citing *Trademark Retail, Inc. v. Apple Glen Investors, LP*, 196 F.R.D. 535, 540 (N.D. Ind. 2000)). Put simply, Plaintiffs' claims are derivative, not direct, whether styled as breach of contract, breach of fiduciary duty, or fraud.

Plaintiffs have failed to demonstrate how the injury they suffered is different from the injury suffered by the limited-liability companies that form the Park Companies. The

test is not simply whether one member was harmed differently than another member; the test is whether the member was harmed differently than the limited-liability company itself or the other members. Thus, for Plaintiffs' to have a direct claim, the injury they suffered must be different than the harm suffered by the limited-liability companies—Hickory, Valley Station, V-Station, Paducah, Carrolton, Alexandria, Campbell, Owensboro, Walton, Cincy MHP, Vanderburgh, and MH Acceptance—not just the other members. In short, the existence of the limited-liability companies must be respected. *Taylor v. Moskow,* No. 13-10802-FDS, 2013 WL 5508157, *4 (D. Mass. October 1, 2013). Accordingly, the Plaintiffs' claims are derivative and must be brought by the Park Companies or on the Park Companies' behalf pursuant to Rule 17(a) of the Federal Rules of Civil Procedure.

Having determined that the thirteen limited-liability companies known as the Park Companies are the real parties in interest pursuant to Rule 17(a), the Court must ascertain the citizenship of those limited-liability companies. For purposes of diversity jurisdiction, courts have created a distinction between incorporated entities and unincorporated entities. A corporation is a citizen of its incorporating state and its principal place of business. *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). However, "[t]he general rule is that all unincorporated entities—of which a limited-liability company is one—have the citizenship of each partner or member." *Delay v. Rosenthal Collins Grp.*, *LLC,* 585 F.3d 1003, 1005 (6th Cir. 2009). Therefore, membership is the key inquiry in determining a limited-liability company's citizenship for jurisdictional purposes. In fact, "a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships." *Id.*

Both the Plaintiffs and Defendants are members of twelve of the thirteen limited-liability companies that form the Park Companies.[9]  Because Plaintiffs DT GRAT and SG LV 2 and Defendants Keeney, Smith, and Williams are all members of Hickory, Valley Station, V-Station, Paducah, Carrollton, Alexandria, Campbell, Owensboro, Walton, Cincy MHP, Vanderburgh, and MH Acceptance, each of those limited-liability companies has the citizenship of its members: Nevada, Ohio, Michigan, and Kentucky.  Given that each of the limited-liability companies, as the substituted Plaintiffs, and Defendants are citizens of Kentucky, complete diversity of citizenship does not exist.  Accordingly, the Court lacks subject-matter jurisdiction and this action must be dismissed.  Having determined that the Court lacks subject-matter jurisdiction, is its unnecessary—and would be improper—for the Court to address the parties' other arguments.

III.    **CONCLUSION**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiffs' Motion for Leave to File Supplemental Authority (Doc. # 69) is **granted**;

(2) Defendants' Motion to Dismiss (Doc. # 38) be, and is hereby **granted**; and

(3) Plaintiffs' Complaint (Doc. # 1) and Amended Complaint (Doc. # 15) are **dismissed** for lack of subject matter jurisdiction; and

(4) This matter is **dismissed** and **stricken** from the Court's active docket.

---

[9]      Plaintiff Temecula is the sole member of Evansville.  The members of Temecula are DT GRAT, DT Sarrifian Trust, and CT Sarrifian Trust, all of which are citizens of Nevada.  Thus, Evansville is also deemed to be a citizen of Nevada for jurisdictional purposes.

This 9th day of November, 2017.



Signed By:
*David L. Bunning*
United States District Judge